STATE OF NORTH CAROLINA
v.
NELSON ORTEGO MAYSONET
No. COA08-566
Court of Appeals of North Carolina.
Filed December 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General K.D. Sturgis, for the State.
J. Clark Fischer, for Defendant.
ARROWOOD, Judge.
Nelson Ortego Maysonet (Defendant) appeals from judgments entered after a jury returned guilty verdicts of two counts of first-degree sexual offense and one count each of first-degree rape, first-degree kidnapping, first degree burglary, assault by strangulation, and interfering with emergency communications. The trial court consolidated Defendant's convictions for sentencing and sentenced Defendant to two consecutive terms of 288 to 355 months imprisonment. We find Defendant received a fair trial, free from error.
At trial the evidence tended to show that Defendant and G.D. (the victim) met in the summer of 2000 and entered into an on-again, off-again relationship for the next several years, punctuated by numerous accusations of infidelity, instances of domestic violence, and intermittent periods where they lived together. The victim had two children when she met Defendant and she and Defendant had two children together during their relationship.
In August 2006, Defendant and the victim were back together with Defendant living in the victim's home. On 20 August 2006, Defendant again accused the victim of infidelity and, after a heated argument, the victim told Defendant the relationship was over and he had to leave the house. Defendant packed his things and left. After Defendant left, the victim took two of her children to their father's house, came home, put her other two children to bed, and went to bed herself around 9:30 p.m.
Later that night, the victim awoke to Defendant entering her house through a window in the bathroom which he had previously left ajar. Defendant proceeded to physically and sexually assault the victim, choking her into unconsciousness, cutting her with a box cutter, raping and sexually abusing her, forcing her to write a suicide note, and threatening to kill her. Eventually, Defendant calmed down and left the residence.
Defendant testified on his own behalf and stated he had gone back to the victim's house that night because he was concerned about the children. Defendant testified that he entered through the window after knocking on the front door and receiving no response. Defendant stated he and the victim got into an argument but then engaged in consensual sexual relations. Defendant gave notice of appeal in open Court.
Defendant first argues the trial court erred in permitting the State to present evidence under Rule 404(b) of the North Carolina Rules of Evidence. We disagree.
Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). However, "evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." State v. Weaver, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) (citations omitted). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). Rule 404(b) is a rule of inclusion and only excludes evidence if the only probative value of the evidence is to show the defendant had the propensity to commit the offense alleged. State v. Bagley, 321 N.C. 201, 206-07, 362 S.E.2d 244, 247 (1987) ("Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also ' is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried.'" (quoting State v. Morgan, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986)). "Under Rule 404(b), evidence of othercrimes, wrongs or acts may be admissible to show motive, opportunity, intent, plan or identity." State v. Carter, 338 N.C. 569, 592, 451 S.E.2d 157, 169 (1994) (citing N.C. Gen. Stat. § 8C-1, Rule 404(b)).
Defendant argues the trial court erred in permitting the State to introduce evidence regarding three previous instances of violence by Defendant against the victim: (1) in August 2000, Defendant and the victim argued about whether he would accompany her to the Social Services office and he pushed her to the ground and pushed her with his foot while she was on the ground; (2) in May 2001, Defendant came home drunk, accused the victim of sleeping with his uncle, grabbed her and stuck his fingers in her vagina; and (3) in July 2001, Defendant came home after drinking, accused her of "sleeping around," and punched her in the eye. This Court has held that "[e]vidence of [a] defendant's prior course of violent conduct with [the victim is] relevant to show [the victim] did not consent to sexual intercourse on the date in question." State v. Daniels, ___ N.C. App. ___, ___, 659 S.E.2d 22, 27 (2008); see also State v. Young, 317 N.C. 396, 413, 346 S.E.2d 626, 636 (1986) ("[E]vidence of a victim's awareness of prior crimes allegedly committed by the defendant may be admitted to show that the victim's will had been overcome by her fears for her safety where the offense in question requires proof of lack of consent or that the offense was committed against the will of the victim."). We do not agree that the only relevance of the victim's testimony regarding the three prior assaults was to show a disposition tocommit similar offenses. The trial court properly admitted the evidence of prior acts of domestic violence between Defendant and the victim to show absence of consent by the victim and the motive and intent of Defendant. Additionally, Defendant has not met his burden of showing the probative value of this evidence was substantially outweighed by a danger of unfair prejudice to Defendant such that it should have been excluded by Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403 (2007). These assignments of error are overruled.
Defendant also argues the trial court erred in denying his motion to dismiss and submitting the charge of first-degree kidnapping to the jury. Defendant contends the State's evidence failed to show an asportation of the victim separate and distinct from that integral to the sexual offenses. Defendant argues that the only movement described by the victim occurred entirely within her house and consisted of Defendant grabbing her by the arm and taking her to the bedroom where the sexual assaults took place. We disagree.
It is well-established that,
[w]hen ruling on a motion to dismiss, the trial court must determine whether the prosecution has presented substantial evidence of each essential element of the crime. Substantial evidence is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The trial court must [then] view the evidence in the light most favorable to the [S]tate, giving the [S]tate the benefit of every reasonable inference that might be drawn therefrom.
State v. Coltrane, ___ N.C. App. ___, ___, 656 S.E.2d 322, 327 (2008) (internal quotation marks and citations omitted). Kidnapping is the unlawful confinement, restraint, or removal of a person from one place to another for the purpose of:
(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or
(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.12.
(5) Trafficking another person with the intent that the other person be held in involuntary servitude or sexual servitude in violation of G.S. 14-43.11.
(6) Subjecting or maintaining such other person for sexual servitude in violation of G.S. 14-43.13.
N.C. Gen. Stat. § 14-39(a) (2007). "If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . ." N.C. Gen. Stat. § 14-39(b) (2007). Further, "[i]t is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim." State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Therefore, "the restraint, which constitutes the kidnapping, [must be] a separate, complete act, independent of and apart from the other felony." Id. at 524, 243 S.E.2d at 352. However,
Asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape. Such asportation is separate and independent of the rape, is removal for the purpose of facilitating the felony of rape, and is, therefore, kidnapping pursuant to N.C. Gen. Stat. § 14-39.
State v. Walker, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987); see also State v. Blizzard, 169 N.C. App. 285, 290, 610 S.E.2d 245, 250 (2005) ("Evidence tending to show the rape victim was forced down a hallway from one room to another was a sufficient asportation separate and independent of the elements of rape to support a conviction for second-degree kidnapping.").
Here, the victim first encountered Defendant as she lay on her bed and he came out of her bathroom after entering through the window. Defendant grabbed and held the victim by her neck and asked her where two of her four children were. After the victim told Defendant the two children were visiting their father, Defendant got up and started looking through the house. The victim followed Defendant as he searched the house. Defendant saw the victim's remaining two children asleep in another bedroom and then went to the kitchen where he grabbed the victim's cell phones and put them in his pocket. Defendant then grabbed the victim by her wrist and took her back to the bedroom. Once in the bedroom, Defendant choked the victim until she passed out. When sheregained consciousness, Defendant sat her on the bed, cut her leg with a box cutter, instructed her to remove her clothes and subsequently raped and sexually assaulted her. Further, after Defendant raped and sexually assaulted her, Defendant pulled her into the kitchen looking for a piece of paper and something to write with so that he could make the victim write a suicide note. Defendant took the victim to the living room and forced her to write a suicide note. Defendant then walked the victim back to the bathroom with the note in hand and told her he was going to kill her. The victim testified that Defendant told her he was not going to kill her only after realizing, because of all of the bruises on her body, that no one would believe she killed herself.
Defendant's movement and restraint of the victim both before and after the sexual assaults constituted asportation of the victim beyond that necessary to commit the sexual assaults. This evidence is sufficient to overcome Defendant's motion to dismiss and the trial court properly submitted the charge of first-degree kidnapping to the jury. This assignment of error is overruled.
No error.
Judges TYSON and BRYANT concur.
Report per Rule 30(e).